# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

ANTHONY RAYMOND LOCKHART,

        Plaintiff,

   v.

FRANK BISIGNANO,
Commissioner of Social Security,

        Defendant.

_____ /

Case No. 1:25-cv-00770-KES-SKO

FINDINGS AND RECOMMENDATIONS
RECOMMENDING THAT PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT
BE DENIED AND THE FINAL DECISION
OF THE COMMISSIONER OF SOCIAL
SECURITY BE AFFIRMED

(Doc. 14)

14-DAY DEADLINE

## I.      INTRODUCTION

On June 25, 2025, Plaintiff Anthony Raymond Lockhart ("Plaintiff") filed a complaint seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his applications for disability insurance benefits ("DIB") and Supplemental Security Income (SSI) under the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

For the reasons set forth below, the undersigned recommends that Plaintiff's motion for summary judgment be denied, and that the final decision of the Commissioner be affirmed.

---

[1] The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

## II.    BACKGROUND

On June 1, 2022, Plaintiff protectively filed claims for DIB and SSI payments, alleging he became disabled on June 10, 2021, due to back problems, kidney problems, arthritis, sciatica, bulging discs, high blood pressure, and asthma.  (Administrative Record ("AR") 24, 74, 87, 101, 113, 318, 324, 339, 368.)

Plaintiff was born in 1974 and was 46 years old on the alleged disability onset date.  (AR 30, 73, 86, 101, 113.)  He has an eleventh-grade education and previously worked as a construction worker and furniture mover.  (AR 30, 66, 319, 322, 327.)

### A.    Relevant Evidence of Record[2]

In September 2021, Plaintiff complained of aching and radiating bilateral flank pain and intermittent lower back pain.  (AR 486–90.)  His "significant" history of polycystic kidney disease was also noted.  (AR 486.)  Plaintiff underwent an epidural steroid injection with "good relief," and the provider observed that Plaintiff's pain is "well controlled" with medication and the injection.  (AR 488.)

At a follow up appointment in June 2022, Plaintiff reported that his back and leg pain were "becoming more bothersome" and requested an injection, which he relayed "provided excellent relief of the pain in the past."  (AR 482.)

In September 2022, consultative examiner Robert Wagner, M.D., performed a comprehensive internal medicine evaluation of Plaintiff, who complained of hypertension, asthma, and thoracolumbar back pain.  (AR 466–71.)  Plaintiff reported that he cooks, cleans, drives, shops, performs his own activities of daily living without assistance, and walks some for exercise.  (AR 467.)  Upon examination, Dr. Wagner observed that Plaintiff "was easily able to get up from a chair in the waiting room and walk at a normal speed back to the examination room without assistance."  (AR 467.)  He "was easily able to get on and off the exam table and easily able to bend at the waist to take off shoes and socks and put them back on, demonstrating good dexterity and good flexibility."  (AR 467.)  Dr. Wagner found Plaintiff's "dexterity is good," as he was "easily able to oppose his

---

[2] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

fingertips to his thumb tips." (AR 467.) Plaintiff exhibited normal station, normal gait without an assistive device, normal finger-to-nose coordination, negative Romberg, normal deep tendon reflexes, grossly intact cranial nerves, normal range of motion, 5/5 strength, and grossly intact sensation. (AR 468–70.)

Plaintiff presented for a follow up appointment in December 2022, complaining that his back pain was radiating, constant, aching, sharp, and aggravated by activity. (AR 474.) It was noted that his past medical history was "significant" for polycystic kidney disease, for which a nephologist is following up. (AR 474.) He reported "improvement of pain with medication" and "greater than 60% reduction" of symptoms. (AR 475.) He also reported a "greater quality of life" and an ability to "meet functional goals including performing [activities of daily living] independently." (AR 475.) Plaintiff wished to proceed with epidural steroid injections, as he was "pleased with the results." (AR 478.) An MRI of Plaintiff's lumbar spine performed that same month showed "L5-S1 moderate to severe degenerative disc disease with severe right and moderate to severe left foraminal stenosis without central canal stenosis; L4-L5 mild to moderate bilateral foraminal stenosis; and L3-L4 mild left foraminal stenosis." (AR 512–13.)

A consultative examination was held in June 2023 with Rajendra Kewallal, Psy.D., in June 2023. (AR 706–12.) Plaintiff reported that he was suffering from depression due to his physical functioning. (AR 706.) He stated that he had "[n]o significant difficulties with shopping, self-care, or independent living," "is independent for basic [activities of daily living]," and "does not need help with preparing meals or doing light household chores." (AR 707.) Upon examination, he was alert and oriented with a friendly manner, good grooming, good eye contact, cooperative attitude, normal speech, good mood, full affect, adequate attention and concentration, adequate fund of knowledge, adequate memory, adequate ability for abstraction, adequate insight and judgment, linear thought process, and normal thought content. (AR 708.) The Wechsler Adult Intelligence Scale, Fourth Edition, was administered and Plaintiff's scores indicated his intellectual ability was within the "extremely low" range. (AR 709.) Based on her examination, Dr. Kewallal issued an opinion, co-signed by Kellie Suller, Psy.D., that Plaintiff had no more than mild limitations in any area of mental functioning, including maintaining regular attendance, performing complex and detailed tasks,

working on a consistent basis, completing a normal workday, working without special or additional supervision, accepting instruction from supervisors, interacting with co-workers, and dealing with stress.  (AR 712.)  In June and September 2023, respectively, Plaintiff underwent a right and left lumbar radiofrequency ablation.  (AR 713–16.)

In October 2023, Plaintiff continued to complain of chronic low back pain that radiates to his lower extremities.  (AR 717–20.)  He reported that the ablation "helped at first but then [he] had hernia repair surgery[,] which may have reduced [its] efficacy."  (AR 718.)  Plaintiff also reported "improvement with medication," that he had "greater than 60% reduction of [symptoms]," and that he was "able to meet functional goals including performing [activities of daily living]."  (AR 718.)

Plaintiff underwent an MRI of his lumbar spine in January 2024, which showed "[m]oderate foraminal stenosis at L5-S1" and "[f]acet arthopathy at multiple levels."  (AR 803.)  That next month, he complained of bilateral flank pain.  (AR 803.)  He stated that opioids improve his pain and function.  (AR 803.)

**B.    Plaintiff's Statements**

In July 2022, Plaintiff completed a "Pain Questionnaire," in which he complained of pain that radiated to his right leg and right shoulder.  (AR 314.)  According to Plaintiff, his pain was exacerbated by prolonged standing and walking, bending, twisting, and driving.  (AR 314.)  He reported that injections cause less pain but do not alleviate it.  (AR 314.)

Plaintiff completed an "Adult Function Report" in March 2023.  (AR 360–67.)  He reported that his pain caused sleep disturbances and difficulty performing household chores.  (AR 361–62.)  According to Plaintiff, he can complete his personal care activities within his physical tolerances.  (AR 361.)  He denied needing reminders to bathe and to take medications.  (AR 362).  He reported activities of daily living including driving, cooking simple meals, managing money, watching television, and reading.  (AR 362–63.)  He can pay bills and handle a savings account independently.  (AR 363.)  He participates in activities, such as watching television, reading, and socializing with others via video chat.  (AR 364.)  He also sits in his front yard and talks to others.  (AR 364.)  He reported that he can only walk about two to three blocks before needing to stop and rest and could only stand for a few minutes at a time.  (AR 365.)  He stated that he may forget parts of spoken

instructions and would need them repeated. (AR 365.) He can handle changes in routine "slowly, but surely" with the support of others. (AR 366.)

### C.    Administrative Proceedings

The Commissioner denied Plaintiff's application for benefits initially on October 20, 2022, and again upon reconsideration on June 29, 2023. (AR 132–37, 140–47.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 155–73.) The ALJ conducted a hearing on August 29, 2024. (AR 40–72.) Plaintiff appeared at the hearing with his attorney and testified. (AR 49–65.) A Vocational Expert ("VE") also testified at the hearing. (AR 65–72.)

#### 1.    Plaintiff's Testimony

At the hearing, Plaintiff testified that he cannot work due to low back pain, sciatica, and drowsiness due to his medications. (AR 58.) He uses a cane as needed, but it was not prescribed by a doctor. (AR 64–65.)

#### 2.    Vocational Expert's Testimony

The VE testified at the hearing that Plaintiff had past work as a construction worker and furniture mover. (AR 66.) The ALJ asked the VE to consider a person of Plaintiff's age, education, and past work history. (AR 66–67.) The VE was also to assume this person could perform light work, except they can frequently climb, stoop, crouch; should avoid concentrated exposure to fumes, odors, dusts, gases and poor ventilation; and they can have occasional exposure to hazards such as unprotected heights and moving machinery. (AR 67.) The VE testified that such a person could not perform Plaintiff's past work, but could perform other light exertional jobs in the national economy, such as general cashier, Dictionary of Operational Titles (DOT) code 211.462-010 with a specific vocational preparation (SVP)[3] of 2; fast food worker, DOT code 311.472-010 with an SVP of 2; and housekeeping cleaner, DOT code 323.687-014 with an SVP of 2. (AR 67.)

With the additional limitations in a second hypothetical that the first hypothetical person could frequently grasp, handle, finger with the nondominant left upper extremity, the VE testified that such

---

[3] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id*.

a person could perform all jobs previously identified, except for the fast food worker.  (AR 67–68.)  According to the VE, in a third hypothetical, when changing the exertional level to sedentary (and keeping all other limitations), the second hypothetical person could perform the jobs of telephone information clerk, DOT code 237.367 046 with a SVP of 2; charge account clerk, DOT code 205.367-014 with an SVP of 2; and ampoule sealer, DOT code 559.687 014 with an SVP of 2.  (AR 68.)  The VE further testified that adding a limitation to the second and third hypotheticals that the individual could understand, remember and carry out simple work instructions would eliminate the general cashier, the telephone information clerk, and the charge account clerk.  (AR 68–69.)

Plaintiff's attorney asked the VE if adding to the first hypothetical individual a requirement of "hourly checks by a supervisor to make sure that they're doing the job correctly and then retrain and reorient them as necessary to make sure that all tasks are performed satisfactorily . . . on an ongoing basis" would be work preclusive, and the VE answered in the affirmative, stating that such would "reflect more of a sheltered work environment."  (AR 69–70.)

**D.     The ALJ's Decision**

In a decision dated September 18, 2024, the ALJ found that Plaintiff was not disabled, as defined by the Act.  (AR 17–32.)  The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. §§ 404.1520 and 416.920.  (AR 19–32.)  The ALJ decided that Plaintiff met the insured status requirements of the Act through December 31, 2022, and he had not engaged in substantial gainful activity since June 10, 2021, the alleged onset date (step one).  (AR 19–20.)  At step two, the ALJ found Plaintiff's following impairments to be severe: degenerative disc disease of the lumbar spine; hypertension; chronic kidney disease; and obesity.  (AR 20–22.)  Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three).  (AR 22–24.)

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[4] and applied the

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule.  TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996).  The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments.  *Id*.  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of

6

assessment at steps four and five. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC:

> to perform light work as defined in 20 CFR [§§] 404.1567(b) and 416.967(b) except frequently climb, stoop, and crouch; should avoid concentrated exposure to fumes, dusts, odors, gases, and poor ventilation; occasional exposure to hazards, such as unprotected heights and moving machinery; and frequently grasp, handle, and finger with the non-dominant left upper extremity.

(AR 24–30.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" the ALJ rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 25.)

The ALJ determined that Plaintiff could not perform his past relevant work (step four) but that, given his RFC, he could perform a significant number of jobs in the national economy, specifically general cashier and housekeeping cleaner (step five). (AR 30–32.) The ALJ concluded Plaintiff was not disabled from June 10, 2021, through the date of the decision. (AR 32.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on May 7, 2025. (AR 1–6.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481.

### III.    LEGAL STANDARD

#### A.    Applicable Law

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they] are not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind

symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920. The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.    Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting

*Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  *See also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review . . . ."  *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).  "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted).  Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)).  "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'"  *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)).  Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).  "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.    DISCUSSION

Plaintiff contends that the ALJ erred during their RFC analysis in their consideration of Plaintiff's mild mental limitations as opined by Dr. Kewallal (and co-signed by Dr. Suller), and that the ALJ failed to articulate clear and convincing reasons for discounting his testimony regarding his subjective complaints.  (Docs. 14, 20.)  The Commissioner responds that the ALJ's treatment of Plaintiff's mild limitations was proper and supported by substantial evidence and that the ALJ

properly relied on evidence in the record that undermined the credibility of Plaintiff's allegations of disabling symptoms and limitations.  (Doc. 16.)  The undersigned agrees with the Commissioner.

**A.      The ALJ's Consideration of Plaintiff's Mild Limitations Was Not Erroneous**

### 1.      Applicable Law

The RFC is "the most [one] can still do despite [their] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.  In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment."  *Robbins*, 466 F.3d at 883.  *See also* 20 C.F.R. §§ 404.1545(a)(3), 416.935(a)(3) (residual functional capacity determined based on all relevant medical and other evidence).  "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings."  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

Where a claimant alleges a mental impairment, steps two and three require the ALJ to apply the psychiatric review technique ("PRT") outlined at 20 C.F.R. §§ 404.1520a and 416.920a to determine the severity of the claimant's impairment at step two, and to determine whether the impairment satisfies Social Security regulations at step three.  If the claimant is found to have a medically determinable mental impairment, the ALJ must "specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s)," then "rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c) of [Sections 404.1520a, 416.920a]," which specifies four broad functional areas: (1) understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself.  20 C.F.R. §§ 404.1520a(b), (c)(3); *id*. §§ 416.920a(b), (c)(3).  The four functional areas are known as the "paragraph B" criteria.

The functional limitations are rated on a five-point scale of "[n]one, mild, moderate, marked, [or] extreme," 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4).  An impairment causing no more than mild limitations in any area is generally considered a non-severe impairment.  20 C.F.R. § 416.920a(d)(1).  If the claimant's impairment does not meet or equal a listed impairment, then the ALJ must determine the claimant's RFC.  The RFC determination is thus distinct from the PRT (and consideration of the "four broad functional" areas) though the discussion often overlaps.

### 2.    Analysis

Here, in performing the psychiatric review technique, the ALJ found that Plaintiff had mild limitations in all four categories, including: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  (AR 20–21.)  Dr. Kewallal opined that Plaintiff had no more than mild limitations in any area of mental functioning, including maintaining regular attendance, performing complex and detailed tasks, working on a consistent basis, completing a normal workday, working without special or additional supervision, accepting instructions from supervisors, interacting with co-workers, and dealing with stress.  (AR 712.)

The ALJ found the opinion persuasive, explaining that it is

> consistent with [Plaintiff's] generally independent activities of daily living that were limited mainly due to his physical impairments, as well as [Plaintiff's] lack of mental health treatment, generally benign mental status exams, and [Plaintiff's] extensive work history.  Dr. Kewallal supported this opinion with an examination of [Plaintiff] that included a generally unremarkable mental status examination and test results indicating extremely low intellectual ability that would cause challenges performing complex tasks.

(AR 22 (internal citations omitted).)

Plaintiff does not challenge the ALJ's conclusion that Dr. Kewallal's opinion was persuasive.  Instead, he argues that despite finding Dr. Kewallal's opinion persuasive, the ALJ's RFC conflicts with the opinion in that it does not include any mental limitations and, where the RFC conflicts with a medical source opinion, Social Security Ruling 96-8p requires the ALJ to explain why the opinion was not adopted.

Plaintiff's argument is unavailing, however, because there is no requirement that mild

11

limitations such as those opined by Dr. Kewallal be incorporated in the RFC, or that the ALJ must explain the omission thereof.  A mild limitation means that "functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited." 20 C.F.R. Part 404, Subpt. P. App. 1, Listing 12.00(F)(2).  Relatedly, where a mental impairment causes no more than mild limitations, the impairment is non-severe (*see* 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1)), and a non-severe impairment "does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1522, 416.922.

In *Woods v. Kijakazi*, the Ninth Circuit found no error where the ALJ assessed mild limitations in two of the four functional categories but included no mental limitations in the RFC.  32 F.4th 785, 794 (9th Cir. 2022).  In so holding, the *Woods* panel noted that "Woods does not identify any particular evidence that the ALJ failed to consider or explain why the record does not support the ALJ's findings regarding her mental functioning." *Id*.  The Ninth Circuit found the ALJ's decision procedurally sufficient, even though the ALJ neither accommodated Woods's mild mental limitations in the RFC nor explained why accommodations were unnecessary.  Following *Woods*, this Court has concluded: "Simply put, there is no requirement that mild limitations be incorporated into the RFC." *Stoy v. O'Malley*, No. 1:24-CV-00131-GSA, 2024 WL 4752438, at *5 (E.D. Cal. Nov. 12, 2024).

Plaintiff's brief does not mention *Woods*—much less explain how it is distinguishable or inapplicable.  Instead, Plaintiff points to cases that are inapposite not only because they predate *Woods'* binding authority, but because they concern ***moderate***, not mild, limitations, which some courts have found <u>must</u> be incorporated into the RFC.  *See, e.g.*, *Wascovich v. Saul*, 2:18-cv-659-EFB, 2019 WL 4572084, at *4 (E.D. Cal. Sept. 20, 2019) ("Where the ALJ accepts the medical assessment of moderate limitations, those limitations must be accounted for in the RFC.") (citing *Betts v. Colvin*, 531 F. App'x 799, 800 (9th Cir. 2013)).

As in *Woods*, Plaintiff does not identify specific evidence of mental limitations that the ALJ failed to consider in assessing the RFC.  Nor does Plaintiff contend that the ALJ erred in failing to find his persistent depressive disorder, borderline intellectual functioning, or adjustment disorder severe.  (*See* AR 20, 22.)  Even if the ALJ had erred, the Ninth Circuit has observed that there is "no authority to support the proposition that a severe mental impairment must correspond to limitations

on a claimant's ability to perform basic work activities." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228–29 (9th Cir. 2009).

Plaintiff also identifies no support for the suggestion that "mild" limitations in the abilities to "accept instructions and perform work activities without special or additional supervision," as opined by Dr. Kewallal, imply a "sheltered employment environment involving frequent supervision, retraining, and reorientation," which the VE testified would be a work-preclusive limitation (AR 69–70). The ALJ expressly found otherwise, concluding no mental limitations were warranted in the RFC because "the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities." (AR 21; *see also* AR 24 ("In making this [RFC] finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.").)

In sum, because limitations due to mild mental impairments are not required to be included in the RFC, Plaintiff has identified no error in the ALJ's RFC assessment as it pertains to their analysis of Dr. Kewallal's opinion. *See Brown v. Comm'r of Soc. Sec.*, No. 2:24-CV-02781 DAD SCR, 2025 WL 3470255, at *8 (E.D. Cal. Dec. 3, 2025) (noting courts "have consistently followed *Woods* in finding that ALJs are not required to incorporate 'mild' limitations in the RFC.") (collecting cases). *See also Marie Beth D. v. King,* No. 3:24-CV-00525-W-AHG, 2025 WL 504368, at *11 (S.D. Cal. Feb. 14, 2025) ("Plaintiff argues that because the ALJ found Dr. Livesay's opinion persuasive, he was compelled to either incorporate the mental limitations in Dr. Livesay's opinion or explain his decision not to include them. The undersigned disagrees."); *Saul R. v. O'Malley*, Case No. EDCV 23-01232-FWS (AS), 2024 WL 3641041, at *2–3 (C.D. Cal., July 3, 2024) ("the ALJ was not required to include the mild mental limitations in the RFC because, as the ALJ noted, the record did not reflect that Plaintiff's mental impairment caused a significant limitation in his ability to work.").

**B.   The ALJ Properly Found Plaintiff Less Than Fully Credible**

**1.   Legal Standard**

In evaluating the credibility of a claimant's testimony regarding subjective complaints, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an

underlying impairment that could reasonably be expected to produce the symptoms alleged. *Id.* The claimant is not required to show that his impairment "could reasonably be expected to cause the severity of the symptom [they have] alleged; [they] need only show that it could reasonably have caused some degree of the symptom." *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if they give "specific, clear and convincing reasons" for the rejection. *Id.* As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009). Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Social Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). General findings are not enough to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

### 2.    Analysis

As noted above, the ALJ found Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms," but rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record . . . ." (AR 25.) Since the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged

symptoms," the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding. *See Vasquez*, 572 F.3d at 591.

Here, the undersigned finds that the ALJ identified at least three valid reasons for discrediting Plaintiff's testimony.

a.    Activities of Daily Living

First, the ALJ found Plaintiff's allegations were "inconsistent with his activities of daily living." (AR 25.) As discussed by the ALJ, the record contains reports of Plaintiff's ability to drive, cook simple meals, manage money, watch television, and read. (*See* AR 362–63, 467.) "[S]ome of the physical and mental abilities and social interactions required in order to perform these activities," the ALJ noted, "are the same as those necessary for obtaining and maintaining employment." (AR 25.)

An ALJ may properly consider a claimant's daily activities when evaluating credibility. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (the nature of daily activities may be considered when evaluating credibility). Moreover, in evaluating a claimant's credibility, an ALJ may consider inconsistencies between the claimant's testimony and the claimant's conduct and whether the claimant engages in daily activities inconsistent with the alleged symptoms. *Molina*, 674 F.3d at 1112. Even where those activities suggest some difficulty functioning, they are grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment. *Id.* at 1113.

The undersigned finds that the above-described activities tend to suggest, as the ALJ concluded, that Plaintiff's ability to participate in the enumerated activities "diminishes the consistency of [his] allegations of functional limitations" (AR 25). *See Fair*, 885 F.2d at 603 (finding that if a claimant has the ability to perform activities "that involved many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent her from working"); *see also, e.g., Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008) (finding that the ALJ sufficiently explained their reasons for discrediting the claimant's testimony because the record reflected that the claimant performed normal activities of daily living, including cooking, housecleaning, doing laundry, and helping her husband managing

finances); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (ALJ's determination regarding claimant's ability to "fix meals, do laundry, work in the yard, and occasionally care for his friend's child" was a specific finding sufficient to discredit the claimant's credibility); *Kelly v. Astrue*, 471 F. App'x 674, 677 (9th Cir. 2012) (holding that ALJ properly made an adverse credibility finding because, in part, claimant's daily activities included driving, washing the dishes, shopping, and caring for her two children); *Nelson v. Colvin*, No. 1:15-cv-00696-SKO, 2016 WL 3407627, at *20 (E.D. Cal. June 20, 2016) (ALJ properly discredited subjective complaints of claimant who suffered from chronic back problems where claimant engaged in activities such as preparing simple meals, washing dishes, driving a car, shopping for groceries and household supplies 2–3 times a week, walking up to a mile, using a computer for about half an hour at a time, visiting with family, mopping and vacuuming, independently handling her own finances, and doing yoga tapes at home.).

Plaintiff asserts that the ALJ's reliance on his activities is error because the ALJ "did not address Plaintiff's Pain Questionnaire and Function Report statements at all in the decision," which show that his daily activities are "extremely limited." (Doc. 14 at 12.) Plaintiff is mistaken. The ALJ did consider both the Pain Questionnaire (AR 25, 28) and the Function Report (AR 20–22, 25, 28, 30) in the decision—including the very pages of those Reports cited by Plaintiff in his briefing (*compare* Doc. 14 at 12 *with* AR 20, 25). And the ALJ recognized in the decision that Plaintiff has some work limitations because of his impairments, including additional postural and environmental limitations beyond those allowed by light exertional work. (*See* AR 24 (RFC formulation); *see also* AR 33 (deeming the consultative examiner's opinion "somewhat persuasive" because he "did not sufficiently consider the claimant's symptoms that included radiation of his pain to his posterior right thigh and increased pain with bending and lifting, suggesting that [Plaintiff] is more limited than the doctor assessed.").) The undersigned concludes that the ALJ properly discredited Plaintiff's testimony that his limitations render him ***completely*** unable to work, however. *Fair*, 885 F.2d at 604; *see also Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) ("So long as the adjudicator makes specific findings that are supported by the record, the adjudicator may discredit the claimant's allegations based on inconsistencies in the testimony or on relevant character evidence."). Where the

16

ALJ makes a reasonable interpretation of Plaintiff's testimony, it is not the Court's role to second-guess it. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (affirming ALJ's credibility determination even where the claimant's testimony was somewhat equivocal about how regularly she was able to keep up with all the activities and noting that the ALJ's interpretation "may not be the only reasonable one"). *See also Ford*, 950 F.3d at 1159 ("Our review of an ALJ's fact-finding for substantial evidence is deferential").

b.    Objective Medical Evidence

The ALJ also found Plaintiff's testimony of extreme limitations to be "inconsistent with the objective medical evidence of record." (AR 26.) An ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of [the impairment]." *Burch*, 400 F.3d at 680. Nonetheless, "lack of medical evidence . . . is a factor that the ALJ can consider in [their] credibility analysis." *Burch*, 400 F.3d at 681. *See also Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *Morgan*, 169 F.3d at 600. Stated differently, "[a]lthough the inconsistency of objective findings with subjective claims may not be the sole reason for rejecting subjective complaints of pain, it is one factor which may be considered with others." *Salas v. Colvin*, No. 1:13–cv–00429–BAM, 2014 WL 4186555, at *6 (E.D. Cal. Aug. 21, 2014) (citations omitted).

Plaintiff challenges the ALJ conclusion by asserting that the ALJ "did not explicitly consider . . . highly relevant evidence" such as a "later lumbar MRI" and records documenting his "[p]olycystic kidney disease," including an "abdominopelvic CT scan." (Doc. 14 at 10.) Once again, Plaintiff is mistaken. The ALJ included a discussion in the decision of each of these records. (*See* AR 26 (lumbar MRI); AR 27 (polycystic kidney disease and CT scan).) At bottom, Plaintiff's disagreement lies with the ALJ's interpretation of the medical evidence, yet it is not within the province of this Court to second-guess the ALJ's reasonable interpretation of that evidence, even if such evidence could give rise to inferences more favorable to Plaintiff. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citing *Fair*, 885 F.2d at 604).

The undersigned therefore finds the ALJ's conclusion that the evidentiary record does not support, and in fact undermines, Plaintiff's subjective statements is supported by substantial evidence. The ALJ's determination that Plaintiff's complaints are inconsistent with the objective medical

17

evidence is therefore another clear and convincing reason for discounting his subjective symptom testimony. *See Molina*, 674 F.3d at 1113 (concluding that the ALJ properly discredited claimant testimony based on inconsistencies with objective medical evidence).; 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

### c. Conservative Treatment

Finally, the ALJ found that Plaintiff's treatment for back pain has been "essentially routine and/or conservative in nature." (AR 26–27.) Specifically, the ALJ observed that although the record indicated degenerative disc disease (AR 512–13), Plaintiff's treatment at most consisted of epidural steroid injections, medication, and physical therapy. (AR 475, 478, 482, 488, 718, 803.)

Plaintiff does not contest the ALJ's characterization of his treatment as conservative.[5] (See Doc. 12 at 13 ("Plaintiff acknowledges that this constitutes conservative treatment.").) Based on the above-described conservative treatment for Plaintiff's back pain, which is supported by the record and not contested by Plaintiff, the ALJ was therefore entitled to discount Plaintiff's credibility. *See Parra v. Astrue*, 481 F.3d 742, 750–51 (9th Cir. 2007) (evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ may properly rely on the fact that only conservative treatment has been prescribed). Accordingly, the ALJ's adverse credibility determination based on Plaintiff's conservative treatment for his back pain will not be disturbed.

In sum, the undersigned finds that the ALJ provided at least three clear and convincing reasons, supported by substantial evidence, to discredit Plaintiff's reports regarding the extent of his

---

[5] Plaintiff does, however, claim that such conservative treatment "failed." (Doc. 14 at 10–11.) It does not appear that the ALJ predicated their credibility finding on the efficacy of Plaintiff's conservative treatment, thereby precluding judicial review. *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) ("We are constrained to review the reasons the ALJ asserts."). But, even if they had, the undersigned observes that there is substantial evidence in the record—most reported by Plaintiff himself—documenting improvement in his pain symptoms with such treatment (*see, e.g.*, AR 488 (pain is "well controlled" with medication and injection); AR 482 (injection provided "provided excellent relief of the pain"); AR 475, 718 (reporting "improvement of pain with medication," "greater than 60% reduction" of symptoms, "greater quality of life" and an ability to "meet functional goals including performing [activities of daily living] independently"); AR 478 ("pleased with the results" of injection); AR 803 (medication improves his pain and function).). *See* 20 C.F.R. §§ 404.1529(c)(3)(iv)–(v), 416.929(c)(3)(iv)–(v); (an ALJ may find a plaintiff less credible when their symptoms can be controlled by treatment and/or medication); *see also Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purposes of determining eligibility for [disability] benefits."). To the extent the ALJ based his credibility finding on such conclusion, it will not be second guessed here. *Tommasetti*, 533 F.3d at 1039; *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002); *Morgan*, 169 F.3d at 600.

limitations.

## V.      FINDINGS AND RECOMMENDATIONS

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1.      Plaintiff's motion for summary judgment (Doc. 14) be DENIED;

2.      The final decision of the Commissioner of Social Security be AFFIRMED; and

3.      The Clerk of Court be DIRECTED to enter judgment in favor of Defendant Frank Bisignano, Commissioner of Social Security, and against Plaintiff Anthony Raymond Lockhart, and to CLOSE this action.

These findings and recommendations are submitted to the District Judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within **fourteen (14) days** of service of these recommendations, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

The District Judge will review the Magistrate Judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **February 13, 2026**                    /s/ *Sheila K. Oberto*
                                          UNITED STATES MAGISTRATE JUDGE